GEORGE B. PATE v. FLORENCE K. BANKS.

(Filed 1 October, 1919.)

1. **Drainage Districts—Statutes—Assessments—Incumbrances—Warranty— Deeds and Conveyances—Mortgages.**

    The assessments upon lands in a drainage district, formed under the statute, ch. 442, Laws 1909, and amended by ch. 67, Laws 1911, are a lien *in rem* on the lands of the owner, for the payment of the bonds issued by the district in accordance with the statute, the district being a geographical *quasi-*public corporation, and the benefits annually accruing to the advantage of successive owners, such assessments are due and payable at stated intervals, but are not the personal obligation of the owner until they are due, nor, until they fall due, an encumbrance within the intent and meaning of a warranty in a deed.

2. **Drainage Districts—Assessments—Notice—Statutes—Nonresidents.**

    The purchaser of lands within a drainage district formed under the provisions of ch. 442, Laws 1909, as amended by ch. 67, Laws 1911, is fixed by the statute with notice of the assessments and the time thereof, whether a resident of another State or not.

APPEAL by plaintiff from *Allen, J.,* at Chambers, 17 July, 1919; from LENOIR.

The Moseley Creek Drainage District, which lies partly in Craven and partly in Lenoir, was established under ch. 442, Laws 1909, amended by ch. 67, Laws 1911, by proceedings taken out in Craven but embraced certain lands in Lenoir, among which is part of the tract conveyed by the defendant to the plaintiff, 30 August, 1913, with covenants of warranty against "encumbrances." The regularity of the drainage proceedings as to this land has been upheld in *Banks v. Lane,* 170 N. C., 14, which was affirmed on rehearing, 171 N. C., 505, and certain other questions connected with it were passed upon in *Taylor v. Comrs.,* 176 N. C., 217. The drainage district and the amount of the assessments were confirmed on 17 April, 1911. These assessments became due and collectible in ten annual installments, the first of these maturing in 1914, about one year after the conveyance to the plaintiff by the defendant.

The plaintiff executed to the defendant a mortgage for $4,000 to secure the balance of purchase money. After the opinion in *Taylor v. Comrs., supra,* was rendered, the defendant demanded payment of $2,300 balance due on purchase money, and began advertisement of foreclosure under the mortgage. This action was instituted to restrain such foreclosure. Upon the hearing the court dissolved the restraining order, holding that on 30, August, 1913, no part of said assessments were encumbrances in the scope of the warranty in the deed. The plaintiff appealed.

*Rouse & Rouse and Y. T. Ormond for plaintiff.*
*Dawson, Manning & Wallace for defendant.*

CLARK, C. J. The only question presented is "whether the drainage assessments against the land which was conveyed to the plaintiff by the defendant on 30 August, 1913, none of which were due and payable at the time of the conveyance, constitute an encumbrance against said land on that date which was contemplated by the covenant against encumbrances."

In *Taylor v. Comrs.,* 176 N. C., 224, the Court, while holding that the point was not absolutely necessary to a decision of that case, said: "But as the case is before us we think it proper to say that the view of the clerk is correct, that the lands are liable to the drainage assessments just as land is liable for other taxes as they fall due from time to time. As owner of the land he does not have to consent to the assessment of either the drainage tax or county or State taxation. The drainage tax becomes a lien, just as the benefits accrue, i. e., annually.

The decree in the drainage district is not a personal liability of Mrs. Banks nor is it a personal liability of George B. Pate. It is a lien *in rem,* accruing annually and resting upon the land into whosoever hands it may be at that time. Pate, as purchaser, entered into possession of the land nearly two and a half years after the final decree establishing the drainage district, and presumably with physical knowledge of the drainage district. While such lien was decreed by the final judgment, 17 April, 1911, the assessments were not liens then but only became such as they subsequently accrued, respectively. They were not actual liens and collectible till each fell due, in turn, in the years 1914 to 1921, and therefore not encumbrances within the meaning of the warranty clause of the deed any more than taxes falling due in each future year. We do not see that Mrs. Banks has any cause to restrain the collection of the assessment for drainage, upon the allegation that she would be liable on her warranty. The future benefits are adjudged to be more than 'the charge.' "

Neither the plaintiff nor the defendant, it appears, had actual notice of the drainage district at the time of the conveyance, and the defendant was then a resident of South Carolina. But they were fixed with legal notice by the proceedings which were conducted in the manner and with the publication of notices prescribed by statute, and we so held. *Banks v. Lane,* 170 N. C., 14, affirmed on rehearing, 171 N. C., 505, and in *Taylor v. Comrs.,* 176 N. C., 217. The system of drainage districts was created by the Legislature as a matter of public policy, and the notices required being a sufficient compliance with constitutional requirements, as we have repeatedly held in numerous cases, the fact that a vendor happens to be a nonresident or the vendee fails to go upon the land for examination by himself or an agent cannot vitiate the proceedings nor can it make the duties and other charges, which will accrue from time to time upon land in the drainage district, an encumbrance. The law makes no exemption for such reasons. If it did so it would make it difficult to sell land lying in these districts.

The lien of the charges for drainage is not a debt of the owner of the land therein, but is a charge solely upon the land and accrues, *pari passu* with the benefits as they shall accrue thereafter. They are not liens until they successively fall due, and are presumed to be paid out of the increased productiveness and other benefits as they accrue from time to time. These assessments are to be levied from time to time to pay, not the indebtedness of the owner of any tract but to pay the bonded indebtedness of the district. In that they are exactly like bonds issued by the township, county, or State for public benefits and which become liens on property *in future* only to the extent of the taxes falling due each year to pay the interest and such part of the principal as may

become due. One who purchases land in a township, county or State cannot complain that these successive tax liens will from time to time be collectible out of his realty. Whether he knew of the existence of such indebtedness or not makes no difference. They are not encumbrances within the sense of the warranty clause of a deed. The assessments in a drainage district to take the water off the land is simply an annual tax for that purpose, limited in this case to ten years, just as bonds issued by a township, county or State become an annual lien to the extent of the amount falling due each year of principal and interest and limited to ten or twenty, or forty years, as may be prescribed.

In like manner to drainage districts, the Government has created irrigation districts in the western part of the Union, the cost of which is charged upon each tract of land for a series of years or *in perpetuam*. These are not encumbrances but, like the cost of taking water off the land or for payment of bonds issued for roads or other purposes, are a "charge" upon the land, falling due from time to time.

These "public charges" are entirely different from a mortgage which is to secure an indebtedness of the mortgagor for a benefit such as money borrowed, or other purpose, already received, nor like the laborer's or mechanic's lien, which is for benefit already received, and which is primarily a personal debt of the employer.

"Pavement" assessments, as is said in *Raleigh v. Peace,* 110 N. C., 32, are like these assessments for drainage purposes, being "founded upon the principle that the land abutting upon the improvement receives a benefit over and above the property of the citizens generally and should be charged with the value of such peculiar benefits" and "do not authorize a personal judgment against the owner of the property." Being a public charge, the owner is not liable therefor and the purchaser takes the land *cum onere.*

In the case of laying water on the land in an irrigation district, or in taking the water off in a drainage district, the benefits will arise anew each year, and the assessments are presumed to be more than counterbalanced by the benefits which shall accrue. It is so adjudged in the decree creating the district. Otherwise, the district would not be made. The annually recurring benefits in an irrigation district or a drainage district accrue to the then owners of the property, and can be of no benefit to him who has parted from it by sale. The charge runs with the land as do the annual benefits. The vendor receiving none of the recurring benefits, is not liable for the recurring charges. Both alike are *in rem* and accrue to the land in the hands of the then owner.

It is otherwise when the owner of lands gives a mortgage for a benefit already accrued or there is a laborer's or a mechanic's lien for work, or lien for material already furnished.

The drainage system was deemed by the Legislature a measure required for the public benefit. While a drainage district is not a governmental agency like a township or county (*Sanderlin v. Luken,* 152 N. C., 741; *Comrs. v. Webb,* 160 N. C., 594; *Leary v. Comrs.,* 172 N. C., 26), it is a geographical *quasi*-public corporation, and the bonds issued by it for the improvement of the district, like bonds issued for public roads or other purposes, become an indebtedness of the district and not of any landowner therein. These bonds, in the case of township and county bonds, are not an "encumbrance" nor yet a lien. They are a "public charge" which falls upon the land in the district *in rem* and to be collected in the same manner as all other public charges, but do not become a lien till the maturity each year of the prescribed amount falling due.

If the drainage district and its assessments and other duties and burdens were an "encumbrance" then the vendor of land lying therein would incur no end of liability, for from time to time other assessments must be called for to maintain, or perhaps extend, the drainage system. The liability, however, is upon the land only, and the grantee takes it just as he takes property subject to the payment of other public bonds already issued or to be issued, but which are an "encumbrance" for which the vendor is liable only to the extent that any installment of the charge or tax is past due.

Affirmed.